## The Snead & Company Iron Works v. Marshall Field.

### Gen. No. 12,175.

1. ARCHITECT—*when decision of, binding upon parties.* Where a building contract provides that all disputes between the parties shall be submitted to the architect as sole arbitrator and there is no evidence tending to show fraud upon the part of such architect, nor that he was misled or so far misapprehended the facts that he did not exercise his real judgment, his decision with respect to a matter in dispute is binding upon the parties.

FREEMAN, J., dissenting.

Mechanic's lien proceeding. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Affirmed. Opinion filed February 20, 1906. Rehearing denied March 21, 1906.

ISHAM, LINCOLN & BEALE, for appellant.

HOLT, WHEELER & SIDLEY, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the complainant from a decree dis-missing for want of equity its bill for a mechanic's lien filed against appellee. No question of procedure is involved and the only question made, is whether anything was due from

defendant to complainant for work done and materials furnished under the contract set out in the bill. After answer and replication the cause was referred to a master whose report was in favor of the defendant. Complainant's exceptions to the report were overruled and the decree appealed from rendered.

In the fall of 1892 Marshall Field was engaged in the erection of a large building for store and office purposes at the northwest corner of Wabash avenue and Washington street, Chicago, of which building D. H. Burnham was the architect and superintendent. The architect prepared specifications for the ornamental iron work of said building and scale drawings therefor on a scale of half an inch to the foot of the wrought iron work, and detail drawings of a part of the cast iron work. The Chicago agent of appellant and other persons engaged in the business of making and putting up ornamental iron work were invited to call at the office of the architect, where the specifications and drawings were kept for examination and inspection by bidders, and submit bids for said work. At that time there were in the office of the architect certain photographs of ornamental wrought iron work executed in Europe, and a panel of wrought iron grille work executed by Winslow Brothers Company. These photographs and the grille were shown to proposed bidders, not as photographs of or as a specimen of the work that would be required, but as illustrative of the general character of the work contemplated and which would be shown in the detail drawings when prepared. The evidence is contradictory as to whether the photographs or grille were seen by any agent or officer of appellant before its bid was submitted. The appellant submitted a bid for the work at the price of $88,643, which was accepted. A contract was then prepared in duplicate in the architect's office, where both copies were signed by appellant by its general manager, Mr. Snead. He also signed the scale drawings and specifications. He was then asked to sign certain photographs, but declined to do so. A discussion then arose between Mr. Snead and Mr. Perkins,

the foreman and superintendent for Mr. Burnham, as to which the evidence is also contradictory. Both parties agree that Snead asked to have the contract back and was told that both copies had been mailed to Mr. Field for his signature. After the discussion between Perkins and Snead had come to an end, Snead said to Perkins that he would write him a letter to make a record of the matter and he did write the following letter, which was received by Perkins on the day of its date, viz.:

"CHICAGO, ILL., November 23, 1892.
"D. H. Burnham, Esqr., City:
"DEAR SIR:— Referring to our conversation of to-day regarding the character of the elevator screens and stairway balustrades for the Marshall Field Building, we would say, that for the stairway balustrades we have allowed the total sum of forty-eight hundred dollars ($4,800), and for the elevator screens the total sum of fifteen thousand dollars ($15,000), and we are ready to dispose of these two amounts in the design in such manner as you think desirable. We had originally estimated for the elevator screens a total of 10,873 sq. ft. Should you determine to have the screens in the north elevators in base, 1st, 2nd, 3rd, and 4th stories of stores in spaces not over doors, it will make an addition of 1,072 sq. ft., which we understand you will take care of by a change in the character of the elevator screen designs.

"We have estimated a total of balustrade of 960 lineal feet. We bring these amounts before you to bring about a clearer understanding between us of the value of the work we are to execute.

"We trust that your understanding is in accordance with this, and that we can proceed on this basis.
"Yours truly,
"WILLIAM R. SNEAD,
"Gen. Mgr."

Both copies of the contract were signed by Mr. Field and one copy thereof sent to appellant at Louisville, Kentucky, November 28, 1902. The contract executed by the parties certainly became binding when the appellant, without

objection, received on November 28th, the copy thereof, executed by Mr. Field, and entered upon the performance of the contract.

The writing executed by the parties contains the contract of the parties and by its terms alone are they bound. The letter of November 23rd was not shown to Mr. Field until the work under the contract had been done and forms no part of the contract between him and appellant.

The contract provides that appellant agreed with appellee "to do the ornamental iron work (of the building in question) according to drawings and specifications prepared by D. H. Burnham (hereinafter referred to as the architect) signed by the contractor and made a part hereof, * * * to remove all improper materials and work when directed by the architect and to substitute therefor such materials and work as in the architect's opinion are required by the drawings and specifications. * * * That the contractor admits that the drawings and specifications are sufficient for their intended purpose, and covenants and agrees to follow same and to furnish all materials of the kind and quality set forth in the specifications * * * and to be governed in each case by the detail drawing in preference to what the general drawing may show for the same part of the work. * * * That the owner in consideration, etc., agrees to pay the contractor $88,643.00 upon written certificate issued by the architect as the work progresses, for a sum not exceeding 85 per cent. of the value of the materials used and labor performed as estimated by or for the architect * * * and a final settlement as to the remainder and extras, if any, shall be had and payment made forty days after the work shall have been completed, free from all claims, liens and charges whatsoever, and the architect shall have so certified in writing. * * * That the owner may at any time during the progress of the work make or require to be made any alterations in the plans, materials or specifications that the owner may deem proper, and that in case of any such alteration or deviation from the drawings and specifications involving in-

creased or diminished expense a just and equitable allowance shall be made to the contractor or the owner therefor by the architect.  * * * And the contractor hereby expressly waives all claim or demand to any allowance for extra work or materials that may be furnished, unless in each case such extra work or materials shall have been furnished on a written order signed by the architect.  * * * That in case the parties hereto cannot agree as to the true value of extra or deducted work, or the amount of extra time, or in case they disagree as to the true meaning of any covenant or agreement herein, the decision of the architect shall in each case be final and binding.

That it is mutually understood and agreed that the drawings and specifications are intended to co-operate, so that any work exhibited on the drawings and not mentioned in the specifications, or *vice versa,* are to be executed the same as if they were mentioned on the drawings and specifications to the true intent and meaning of such drawings and specifications without any extra charge whatsoever, and should any dispute arise respecting the true construction or meaning of the drawings and specifications, the same shall be decided by the architect, and his decision shall be final and conclusive."

The contract provided that all the work mentioned in the contract by which other contractors could be delayed, should be completed by April 1, 1903, and that on failure so to complete the work by that date the contractor should be assessed as liquidated damages $150 per day for each day thereafter until the work was completed.

August 11, 1903 appellant presented to the architect its final bill under the contract for............$133,825.60 made up of the contract price....$88,643.00
Various items of extras amounting to ....................... 45,182.60   $133,825.60

From this bill the architect deducted $49,990.62; $3,900 for delay on the part of the contractor, and the remainder for extras claimed by the contractor, but not allowed by the

architect, and issued to appellant the following final certificate:

"16,835.07.

    D. H. Burnham, Architect.

      The Rookery.

                    Chicago, Jan. 29th, 1894.

To Marshall Field:

Snead & Co. Iron Works, contractor for ornamental iron for your building, located N. W. cor. of Washington St. & Wabash Av. is entitled to the sum of sixteen thousand eight hundred thirty-five & 07-100 dollars.

Original contract price,.. $88,643

Contemplated work contracted for since, extras,   45,182.69   Total claim being,

                       $133,825.69

Deductions, .......... 49,990.62 · $86,835.07

| | | | | | | |
|---|---|---|---|---|---|---|
| On ac- | Feb. 15, 1893, | certificate | No. | 7 for.. | $ | 7,500.00 |
| count of | Mar. 17, " | " | " | 11 " .. | | 5,000.00 |
| above is- | Apl. 16, " | " | " | 18 " .. | | 20,000.00 |
| sued | May 13, " | " | " | 30 " .. | | 12,500.00 |
| | May 27, " | " | " | 35 " .. | | 15,000.00 |
| | June 19, " | " | " | 41 " .. | | 5,000.00 |
| | July 5, " | " | " | 47 " .. | | 5,000.00 |

This present certificate Number 98 is for.... 16,835.07

    Final                           $86,835.07

                      D. H. BURNHAM."

This certificate was presented to H. G. Selfridge, the manager of the retail store of Marshall Field & Co., was checked or endorsed by him and the balance thereby shown to be due was then paid to and accepted by appellant. The deduction of $49,960.62 made by the architect in his final certificate from the bill of appellant which was presented to him is made up, principally, of two claims for extra work disallowed by him; one for extra work upon the stairway

balustrades, the other for extra work on the elevator screens, and of the sum of $3,900 assessed by him against the appellant for delay in completing the work.                    -

As to the allowance against appellant of $3,900 for delay, the principal contention of appellant is, that the delays were caused by delays of the architect in furnishing to it detail drawings.  It appears from the testimony of the architect that the questions as to the delays in the prosecution and completion of the work, and as to who was responsible therefor, were carefully considered by him, that 55 days elapsed between the time fixed by the contract for the completion of the work and the time of its completion; that from such period of delay he made deductions for strikes, for Sundays, for interference by other contractors and for the possible failure of his office to furnish drawings in time, and thereby reduced the delay charged to appellant from 55 days to 26 days, and for that number of days at $150 per day, the amount per day specified in the contract, he assessed against appellant, for delay, said sum of $3,900.

The architect was by the contract authorized and empowered to determine how much time, if any, should be charged against the contractor for delay, and in the absence of evidence of fraud or mistake on his part, his decision upon that subject is conclusive upon the parties, and the contract fixed the amount that should be assessed against the contractor for each day's delay in the completion of the work.

The report of the master sets out the various contentions of the parties upon the question whether the architect was justified in treating the photographs of iron work and the grille which were in his office with the specifications and drawings when bidders came there to examine said specifications and drawings, with a view to bidding for such work, as illustrative of the character of the work that would be required and shown by the detail drawings and as elements to be considered in the interpretation of the contract and the specifications and drawings.  If the architect was justified in so treating said photographs and grille, then the appellant has no just ground to complain of his decision, for the

work shown by the detail drawings and done by appellant in accordance therewith was much less elaborate and expensive than that shown by either the photographs or the grille. If, on the other hand, the grille and photographs should not have been considered by the architect, for any purpose, then we have a case where a bid was made by appellant, accepted by the appellee and a contract entered into between them, without anything but the specifications and scale drawings to indicate the nature of the work required. That the scale drawings were to be elaborated, that detail drawings were to be prepared by the architect, clearly appears from the contract. The contract provided in express terms that the architect's construction of the contract and the drawings should be binding upon the parties. The making and furnishing to appellant of the detail drawings by the architect was a decision by him as to the construction of the contract and the specifications and drawings which were a part of the contract. Whether the detail drawings were a proper working out of the scale drawings, independent of the grille or the photographs, is a question upon which the evidence is conflicting. Burnham and other well known architects and contractors testified that they were; other architects and contractors, perhaps equally well known, testified that they were not. But the contract provided that the question, "respecting the true construction and meaning of the drawings or specifications shall be decided by the architect and his decision shall be final and conclusive."

The contentions of appellant here presented, were presented to Burnham by appellant before his decision was made, and that decision was against such contention. Burnham testified that it was then his judgment that the detail drawings were a proper working out of the scale drawings independently of the grille or the photographs.

The disputes that arose between the parties and out of which the present controversy has grown, were all disputes which the parties, by their contract, had agreed should be submitted to the architect as sole arbitrator. There is no evidence even tending to show fraud on the part of the

architect, nor that he was misled, or so far misapprehended the facts, that he did not exercise his real judgment, and this must be shown before a court can set aside the decision of an arbitrator upon the ground of mistake. McAuley v. Carter, 22 Ill., 53.

The majority of the court are of opinion that the decision of the architect disposed of all the questions in dispute between the parties which are set forth in the bill; that the amount found by the architect to be due from appellee to appellant in and by final certificate of the architect having been paid to and received and accepted by appellant, the bill of complaint of appellant was properly dismissed for want of equity, and the decree of the Circuit Court will be affirmed.

*Affirmed.*

The judgment will be entered as of the day on which the cause was taken for decision.

MR. JUSTICE FREEMAN, dissenting.

The contract and specifications as made by the parties did not contain detailed plans, drawings or specifications calling for elaborate iron work such as was afterward demanded. The power given to the architect by the contract to determine the meaning of disputed provisions did not in my opinion authorize him arbitrarily to in effect make a new contract adding new plans or specifications involving the contractor in additional expense to the amount of over forty thousands of dollars not required by the original contract. The contractor was bound to do such work only as the contract in terms provided for. It did not provide that he should furnish the kind of iron work called for under the new detailed plans subsequently furnished by the architect.